UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL ARMSTRONG,

    Plaintiff/Counter-Defendant,

v.                                                                             Case No. 17-C-1787

INTERNATIONAL STOCK FOOD CORPORATION,

    Defendant/Counter-Plaintiff.

## DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Daniel Armstrong filed this action against his former employer, Defendant International Stock Food Corporation (ISF), seeking a declaration that the post-restrictive covenants in his Non-competition, Non-solicitation, and Confidentiality Agreement are unenforceable. In turn, ISF filed a counterclaim asserting that Armstrong breached the Agreement and requesting preliminary and permanent injunctive relief barring Armstrong from continuing to violate the Agreement. Presently before the court is ISF's motion for a preliminary injunction to enjoin Armstrong from violating Paragraph 2.c of the Agreement. For the reasons that follow, the motion will be denied.

### BACKGROUND

ISF indirectly manufactures and directly sells a variety of animal feed, forage treatments, preservatives, and related products to agricultural product distributors. Armstrong began working for ISF in August 2010 as a Regional Sales Representative. His territories included Wisconsin and Illinois. ISF subsequently promoted Armstrong to a Regional Sales Manager position, expanding

his territories to include Wisconsin, Illinois, Indiana, Michigan, and New York. After ISF promoted Armstrong, Armstrong signed a "Noncompetition, Nonsolicitation, and Confidentiality Agreement" on November 16, 2011. The present motion concerns the restrictive covenant contained in Paragraph 2.c of the Agreement, which reads as follows:

> **Covenant Not to Solicit or do Business with Suppliers, Manufacturers, and Customers of the Company**. During Employee's employment with the Company and for a period of twenty-four (24) months after the termination of Employee's employment with the Company (whether such termination is voluntary or involuntary), Employee covenants and agrees that he or she shall not, directly or indirectly, solicit or attempt to solicit the purchase or sale of goods or services relating to the Business of the same or similar type Employee sold, purchased or provided during the course of his or her employment, on behalf of himself, herself or any other person (other than the Company), from any of the Company's suppliers, manufacturers and customers, including actively sought prospective suppliers, manufacturers and customers of the Company, with whom Employee had "material contact" at any time within the two (2) year period immediately prior to the date of termination of [his] or her employment with the Company, specifically including, but not limited to the customers and suppliers listed on Exhibit "B" attached hereto. "Material contact" exists between Employee and each supplier, manufacturer and customer or potential supplier, manufacturer and customer who satisfy any of the following conditions: (i) with whom Employee dealt in an effort to further the business relationship of such supplier, manufacturer and customer or potential supplier, manufacturer and customer with the Company; (ii) whose dealings with the Company were coordinated or supervised by Employee to any material degree; (iii) about whom Employee obtained trade secrets or confidential information as a result of Employee's association with the Company; or (iv) who received products or services from the Company, the sale or provision of which results or resulted in compensation, commissions or earnings for Employee (in addition to Employee's base salary).

ECF No. 1-2 at 2. ISF terminated Armstrong for decreased sales in December 2017. Armstrong later started his own business selling agricultural products. On February 20, 2018, ISF moved for a preliminary injunction to restrain Armstrong from violating Paragraph 2.c. The court held a hearing on the motion on April 12, 2018.

2

**ANALYSIS**

A preliminary injunction is an "extraordinary and drastic remedy" that should only be granted when the movant clearly demonstrates that he is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *see also Korte v. Sebelius*, 735 F.3d 654, 703 (7th Cir. 2013). To obtain a preliminary injunction, the moving party must show that it has "(1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). If this showing is made, "the court weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest." *Korte*, 735 F.3d at 665.

ISF is unlikely to succeed on the merits, here. The parties agree that Wisconsin law applies to Armstrong's Non-solicitation Agreement. Under Wisconsin law, restrictive covenants "are prima facie suspect as restraints on trade that are disfavored at law, and must withstand close scrutiny as to their reasonableness." *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶ 19, 319 Wis. 2d 274, 767 N.W.2d 898. To be enforceable, a restrictive covenant must "(1) be necessary for the protection of the employer or principal; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy." *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 751, 277 N.W.2d 787 (1979). Pursuant to the statute governing restrictive covenants, any covenant "imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint." Wis. Stat. § 103.465. Even though reasonable restraints in a restrictive covenant fall upon a finding that any part in the covenant is unreasonable, the Wisconsin Supreme Court has held that this rule does not apply to separate, divisible covenants. *Star Direct*,

3

319 Wis. 2d 274, ¶¶ 76–82 (finding non-disclosure and non-compete clauses were divisible because striking one would leave the other understandable and independently enforceable).

The restrictive covenant in this case imposes a two-year ban on Armstrong's ability to solicit ISF's suppliers, manufacturers, and customers, including actively sought prospective suppliers, manufacturers, and customers, with whom Armstrong had "material contact" at any time within the two year period preceding the date of his termination. The covenant appears to be overbroad and one that would likely be found unenforceable. First, the covenant prohibits Armstrong from not only soliciting ISF's customers but also its suppliers and manufacturers. ISF candidly concedes that the restriction on Armstrong's contacts with suppliers and manufacturers is likely overbroad and therefore invalid under Wisconsin law. Under the statute's "blue pencil" rule, this would normally spell doom for the entire covenant. *See id.* at ¶ 73 ("Under the blue-pencil rule, however, where the contract furnished no basis for dividing the restriction into reasonable and unreasonable portions, the whole covenant was void if any part of the restriction was unreasonable." (internal quotations omitted)). ISF argues, however, that the covenant is divisible and the language concerning suppliers and manufacturers is immaterial because Armstrong did not have material contact with these particular entities. It asserts that, when the court looks at both the language of the covenant and the facts of this particular case, as required by *Star Direct*, the portion of Paragraph 2.c that bans the solicitation of suppliers and manufacturers is effectively nullified and cannot affect the covenant's enforceability.

But the fact that Armstrong did not have material contact with suppliers and manufacturers does not mean that the covenant ISF seeks to enforce is divisible. ISF must still demonstrate that the restriction against soliciting manufacturers and suppliers is divisible from the restriction

4

concerning customers. It is not enough to say that the overly broad provision is unlikely to apply under the facts of the case. *See Geocaris v. Surgical Consultants, Ltd.*, 100 Wis. 2d 387, 389, 302 N.W.2d 76 (Ct. App. 1981) ("We reject the trial court's conclusion that the restriction was reasonable because Geocaris was not likely to practice medicine in any capacity other than as a surgeon.").

In *Star Direct*, the contract at issue contained three separate restrictive covenants designated the "customer clause," the "business clause," and the "confidentiality clause." The court analyzed each clause separately and found that only the business clause was over broad. The court declined to render the other two provisions unenforceable simply because another provision was and instead held that the covenants were divisible. 319 Wis. 2d 274, at ¶ 76. But in order for the issue of divisibility to arise, there must be separate covenants. "Restrictive covenants are divisible when the contract contains different covenants supporting different interests that can be independently read and enforced." *Id.* at ¶ 78. Otherwise, the court is simply rewriting the provision at issue, precisely what the legislature, in enacting § 103.465, intended to prevent. *See Streiff v. Family Mut. Ins. Co.*, 118 Wis. 2d 602, 608–09, 348 N.W. 2d 505 (1984). Here, the limitations concerning suppliers and manufacturers are in the same covenant as the limitation concerning customers. What ISF is asking the court to do is edit its covenant in order to make it enforceable. This is exactly what the statute is intended to prevent courts from doing. I conclude that ISF's restrictive covenant is not divisible. Since the limitations on Armstrong's contact with suppliers and manufacturers are unnecessary, the entire covenant is likely unenforceable.

Even if I found the covenant divisible, the result would be the same. Paragraph 2.c also bans the solicitation of ISF's potential customers, even those entities that have never been ISF customers.

5

Several courts have found that a restrictive covenant is overbroad when it prevents a former employee from soliciting potential customers. For instance, in *JT Packard & Associates, Inc. v. Smith*, 429 F. Supp. 2d 1052 (W.D. 2005), the plaintiff sought to enforce its former employee's non-solicitation agreement, which prevented the employee from soliciting "any new customers that were former customers or potential customers of plaintiff, even if the new customers were ones that had followed defendant to plaintiff from his previous job or were 'potential' customers that had no intention of becoming actual customers of plaintiff." *Id.* at 1053. The court found that the covenant appeared to be overbroad because it prohibited the employee from soliciting potential customers for its new employer. It reasoned that barring the former employee from soliciting potential customers restricted him "from servicing any customer he tried but failed to solicit while he was working for plaintiff, even if that potential customer went to defendant On Power while Smith was still working for plaintiff or refused to become a customer of plaintiff despite plaintiff's best efforts." *Id.* at 1056. Given Wisconsin's strong presumption in favor of the mobility of workers, the court concluded the plaintiff did not have a realistic chance of ultimately prevailing on its claim and denied its motion for a preliminary injunction. *Id.* at 1055.

Similarly, the district court in *Sysco Food Services of Eastern Wisconsin, LLC v. Ziccarelli*, 445 F. Supp. 2d 1039 (E.D. Wis.), denied an employer's motion for a preliminary injunction because the non-solicitation agreement restricted its former employees from soliciting, selling to, or contacting any person, firm, or company from whom the employees solicited any order or to whom the employee sold any product or service or otherwise dealt with on behalf of the company. *Id.* at 1048. The court observed that the covenant was problematic because it prohibited former employees from soliciting anyone from whom they solicited an order, regardless of whether they ever sold

6

anything. That is, the restrictive covenant prevented former employees from doing any business with those who did not become customers of Sysco. *Id.* at 1048–49. The court denied Sysco's motion for a preliminary injunction, finding that Sysco did not have an interest in limiting legitimate and ordinary competition. *Id.* at 1050; *see also Karsten v. Terra Eng'g & Constr. Corp.*, 2017 WI App 71, 378 Wis. 2d 328, 904 N.W.2d 409 (relying on *Sysco*, the court held the restrictive covenant was unreasonable because it prohibited the former employee from competing with Terra not only as to Terra's actual customers but also as to non-Terra customers that Terra unsuccessfully solicited).

ISF argues these cases are distinguishable from the instant one because the covenant here only restricts Armstrong from soliciting those customers he had "material contact" with. But this limitation is not as significant as ISF suggests. "Material contact" is defined to include a customer "with whom [Armstrong] dealt in an effort to further the business relationship of such supplier, manufacturer and customer or potential supplier, manufacturer and customer with the Company." ECF No. 1-2 at 2. The phrase "with whom he dealt" is overly broad because it may include a variety of interactions Armstrong could have had with ISF's actual and potential customers. *See Sysco*, 445 F. Supp. 2d (finding that, on its face, the phrase "otherwise dealt with" is "an extremely broad term that encompasses all sorts of interactions"). In short, Paragraph 2.c prevents Armstrong from contacting any entity that refused to work with ISF simply because he had dealt with it during his employ at ISF. ISF has not established that it would likely succeed in establishing that its restrictive covenant did not restrain Armstrong beyond what is "reasonably necessary" to protect its business. *Star Direct*, 319 Wis. 2d 274, ¶ 48.

In addition, ISF has failed to show irreparable harm. Although ISF claims it will lose customer sales as a result of Armstrong's continued business practices, it has not established that it

7

will become insolvent or that any difficulty in computing its damages is insurmountable. *See JT Packard*, 429 F. Supp. 2d at 1056; *S & S Sales Corp. v. Marvin Lumber & Cedar Co.*, 435 F. Supp. 2d 879, 883 (E.D. Wis. 2006) ("Where a plaintiff will not incur losses so great as to threaten its solvency and where its losses will be largely economic and thus measurable and compensable, the plaintiff does not establish irreparable harm." (citing *Praefke Auto Elec. & Battery Inc. v. Tecumseh Prods. Co.*, 255 F.3d 460, 463 (7th Cir. 2001))). ISF also fears Armstrong has insufficient assets to satisfy a judgment. This assertion is at best speculative, since ISF has presented no evidence that Armstrong will become insolvent. Finally, I cannot say that the potential injury ISF faces if it has to compete with Armstrong's one-man company is greater than the potential injury Armstrong will suffer if he cannot work in the only industry he has known for nearly his entire professional career. In sum, ISF has not made the required showing for the preliminary relief it seeks. For these reasons, ISF's motion for a preliminary injunction (ECF No. 9) must be **DENIED**.

    **SO ORDERED** this   13th   day of April, 2018.

                                        s/ William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court